**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
BIRMINGHAM RETIREMENT AND RELIEF :
SYSTEM, et al., Individually and on Behalf of All :   No. 13 Civ. 2459 (VM) (KNF)
Others Similarly Situated, :
:
                              Plaintiffs, :   ECF CASE
:
                  - against - :
:
S.A.C. CAPITAL ADVISORS, L.P., et al., :
:
                              Defendants. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**


MOTLEY RICE LLC                         SCOTT+SCOTT,
28 Bridgeside Boulevard            ATTORNEYS AT LAW, LLP
Mount Pleasant, SC  29464            The Helmsley Building
Telephone:  (843) 216-9000        230 Park Avenue, 17th Floor
                                                    New York, NY  10169
                                            Telephone:  (212) 223-6444


*Lead Counsel and Counsel for Wyeth Lead Plaintiffs*
*Birmingham Retirement and Relief System and KBC Asset Management NV*


DATED:  August 19, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF THE CLAIMS ASSERTED IN THE ACTION ........................................ 3

THE COURT-ORDERED NOTICE PROGRAM .................................................................. 5

ARGUMENT ........................................................................................................................ 7

I.    THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION ..................... 7

II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......................... 8

      A.    The Standard for Evaluating Class Action Settlements ......................... 8

      B.    The Settlement Is Procedurally Fair ..................................................... 10

      C.    Application of the *Grinnell* Factors Supports Approval of the Settlement ........... 12

            1.    The complexity, expense, and likely duration of the litigation
                  support final approval of the Settlement. ................................... 12

            2.    The reaction of the Class to the Settlement supports final approval
                  of the Settlement. ..................................................................... 13

            3.    The stage of the proceedings and discovery completed support
                  final approval of the Settlement. ............................................... 15

            4.    The reasonableness of the Settlement in relation to the risk of
                  establishing liability and damages supports final approval of the
                  Settlement. ............................................................................... 17

            5.    The risks of maintaining the class action through trial support final
                  approval of the Settlement. ....................................................... 20

            6.    The ability of Defendants to withstand a greater judgment supports
                  final approval of the Settlement. ............................................... 21

            7.    The amount of the Settlement supports final approval of the
                  Settlement. ............................................................................... 22

III.  THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ......................................... 24

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

### CASES

*Acevedo v. Workfit Medical LLC*,
No. 6:14-CV-06221 EAW, 2016 WL 2962930 (W.D.N.Y. May 20, 2016) ............................ 8

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D. 41 (E.D.N.Y. 2010) ............................................................ 14

*AT & T Mobility Wireless Data Services Sales Tax Litigation*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................... 6

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK),
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................................ 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d. Cir. 2000) ......................................................... 8, 9, 21

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)................. passim

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................... 14

*Fleisher v. Phoenix Life Insurance Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..................... 9

*In re Advanced Battery Technologies, Inc. Securities Litigation*,
298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................... passim

*In re Alloy, Inc. Securities Litigation*,
No. 03 Civ. 1597 (WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................... 12

*In re American Bank Note Holographics, Inc., Securities Litigation*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................ 20, 24

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......... 12, 15

*In re Bear Stearns Cos. Securities, Derivative, & ERISA Litigation*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................ 10, 15

*In re Cardizem CD Antitrust Litigation*,
218 F.R.D. 508 (E.D. Mich. 2003) ...................................................... 24

*In re Citigroup Inc. Bond Litigation*,
296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................ 10

*In re Countrywide Financial Corp. Customer Data Security Breach Litigation*,
No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ....................... 6

*In re Countrywide Financial Corp. Securities Litigation*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................ 19

*In re Crocs, Inc. Securities Litigation*,
  306 F.R.D. 672 (D. Colo. 2014) ................................................................ 22

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................... 17

*In re Giant Interactive Group, Inc. Securities Litigation*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................... 7, 10

*In re Global Crossing Securities & ERISA Litigation*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................... 9, 18, 19, 20

*In re Hi-Crush Partners L.P. Securities Litigation*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................... 11, 16, 18

*In re Marsh & McLennan Cos. Securities Litigation*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................... 14

*In re McDonnell Douglas Equipment Leasing Securities Litigation*,
  838 F. Supp. 729 (S.D.N.Y. 1993) ........................................................ 8

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................... 23

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  No. 02 MDL 1484(JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ......................... 9

*In re National Football League Players Concussion Injury Litigation*,
  821 F.3d 410 (3d Cir. 2016) ............................................................ 15

*In re National Football League Players' Concussion Injury Litigation*,
  307 F.R.D. 351 (E.D. Pa. 2015) ......................................................... 15

*In re PaineWebber Ltd. Partnerships Litigation*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................... 10, 13

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................... 18

*In re Sony SXRD Rear Projection Television Class Action Litigation*,
  No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ......................... 21

*In re Sturm, Ruger, & Co. Securities Litigation*,
  No. 3:09cv1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ......................... 13

*In re Sumitomo Copper Litigation*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................... 12

*In re Top Tankers, Inc. Securities Litigation*,
  No. 06 Civ. 13761(CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...................... 23

*In re Veeco Instruments Inc. Securities Litigation*,
  No. 05 MDL 0165(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................... 11, 13

*In re Warfarin Sodium Antitrust Litigation*,
  391 F.3d 516 (3d Cir. 2004) ............................................................ 21

*In re Wirebound Boxes Antitrust Litigation*,
   993 F.2d 152 (8th Cir. 1993) .................................................................................. 14

*In re WorldCom, Inc. ERISA Litigation*,
   No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)................... 8

*In re WorldCom, Inc. Securities Litigation*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................... 24

*In re WorldCom, Inc. Securities Litigation*,
   No. 02 CIV 3288(DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................. 14

*Independent Bulk Transport, Inc. v. Vessel "Morania Abaco"*,
   676 F.2d 23 (2d Cir. 1982) .................................................................................... 19

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   40 F. Supp. 3d 332 (S.D.N.Y. 2014) ................................................................ 3, 19

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 24

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................................ 21

*McPhail v. First Command Financial Planning, Inc.*,
   No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................. 23

*Mills v. Capital One, N.A.*,
   No. 14 Civ.1937(HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .................. 7

*New York Marine & General Insurance Co. v. Tradeline (L.L.C.)*,
   266 F.3d 112 (2d Cir. 2001) .................................................................................. 19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................................. 22

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)........... 17

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................ 10, 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................... 13

*Sykes v. Mel Harris & Associates, LLC*,
   No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .................. 16

*Teachers' Retirement System of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)................... 16

*United States v. Newman*,
   773 F.3d 438 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 242 (2015)............................ 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 8, 15

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ....................................................................... 8

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).......................... 9

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12 Civ. 3693(PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)..................................... 13

## STATUTES

15 U.S.C. § 78t-1(b)(2)............................................................................................................ 19

## RULES

Fed. R. Civ. P. 23(e)(2)............................................................................................................. 8

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, City of Birmingham Retirement and Relief System ("Birmingham") and KBC Asset Management NV ("KBC") (collectively, "Wyeth Lead Plaintiffs" or "Plaintiffs"),[1] respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and for approval of the proposed Plan of Allocation.[2] The [Proposed] Final Judgment and Order of Dismissal With Prejudice is attached as Ex. A; the [Proposed] Order Approving Plan of Allocation is attached as Ex. B.

## PRELIMINARY STATEMENT

After three years of litigation, Plaintiffs propose for this Court's final approval:  (1) a settlement and dismissal of this securities fraud action against S.A.C. Capital Advisors, L.P., S.A.C. Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, S.A.C. Select Fund, LLC, and Steven A. Cohen ("Cohen") (collectively, "SAC Capital Defendants" or "Defendants") in exchange for the payment of ten million dollars ($10,000,000); and (2) a Plan of Allocation for the disbursement of the proceeds among Class Members.  As set forth below and in detail in the accompanying Declaration of Deborah Clark-Weintraub in Support of (A) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (B) Wyeth Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses,

---

[1]     All capitalized terms not defined herein have the same meanings set forth in the Stipulation and Agreement of Settlement dated December 21, 2015 (the "Stipulation"), filed with the Court on December 23, 2015.

[2]     Plaintiffs also seek final certification of the Class, the appointment of Plaintiffs as Class Representatives, and the appointment of Wyeth Lead Counsel as Class Counsel.

and Reimbursement of Plaintiffs' Expenses (the "Clark-Weintraub Declaration"),[3] the Settlement represents a substantial recovery for the Class, particularly when balanced against the potential recovery and the risks and obstacles of continued litigation.  Significantly, the parties reached the Settlement only after extensive, arm's-length negotiations conducted by experienced counsel with the assistance of former United States District Judge Layn R. Phillips serving as mediator.[4]

Prior to the Settlement, this case was carefully investigated and vigorously litigated.  The SAC Capital Defendants asserted strong defenses, adamantly denied liability, and were firm in their belief that Plaintiffs could not prevail either on liability or damages.  Significantly, Wyeth Lead Counsel spent a considerable amount of time and resources on this case.  Indeed, the Settlement was achieved only after Wyeth Lead Counsel, among other things:

- Assisted in the review and analysis of over four million documents obtained in discovery, including reviewing documents which the SAC Capital Defendants had provided to the Securities & Exchange Commission ("SEC") and the U.S. Attorney's Office ("USAO");

- Assisted in the review and analysis of documentation concerning the SAC Capital Defendants, including testimony offered in other legal proceedings involving Cohen and Mathew Martoma ("Martoma"), two of the defendants in this Action;

- Conducted a comprehensive investigation of the events underlying the claims alleged in the Action, as well as the governing law and potential defenses;

- Assisted in the drafting of multiple extensive amended complaints,  oppositions to the Defendants' motions to dismiss, and Plaintiffs' motion for class certification; and

- Participated in an extensive mediation process with Judge Phillips.

---

[3]   The Clark-Weintraub Declaration is an integral part of this submission and the Court is respectfully referred it to for, *inter alia*, a summary of the allegations and claims and a description of the procedural history of the Action, the investigation conducted by counsel, the events that led to the Settlement, and the risks and uncertainties of continued litigation.

[4]   Judge Phillips is a highly respected and experienced mediator.  *See infra* Part B.

*See* Clark-Weintraub Decl. ¶5.  In view of the foregoing, Plaintiffs and their counsel had a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement before entering into it and presenting it to the Court.

Wyeth Lead Counsel are highly experienced in prosecuting securities class actions, and have concluded that the Settlement is an excellent recovery.  This conclusion is based on, among other things, the certain recovery obtained when weighed against the significant risk, expense, and delay presented in continuing the Action through the completion of discovery, motion(s) for summary judgment, trial, and probable post-trial motions and appeal(s); a complete analysis of the facts adduced to date; past experience in litigating complex securities class actions; and the serious disputes between the parties concerning damages.

Accordingly, Wyeth Lead Plaintiffs respectfully request that the Court finally certify the Class and grant final approval of the Settlement.  In addition, the Plan of Allocation, which was developed with the assistance of Plaintiffs' damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members and also should be approved by the Court.

## SUMMARY OF THE CLAIMS ASSERTED IN THE ACTION

The Clark-Weintraub Declaration explains the factual and procedural history of this litigation.[5]  In short, this Action arises out of allegations that SAC Capital Defendants violated §§10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by engaging in an unlawful insider trading scheme.  Wyeth Lead

---

[5]     The factual background of Wyeth Lead Plaintiffs' claims also was set forth at length in the Court's decision on the SAC Capital Defendants' initial motion to dismiss.  *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 336-38 (S.D.N.Y. 2014).

Plaintiffs allege that the SAC Capital Defendants traded Wyeth common stock while in possession of material, nonpublic information concerning the Phase 2 clinical trial of bapineuzumab ("bapi"), a potential Alzheimer's disease treatment under joint development by Elan[6] and Wyeth, between at least January 2008 and July 2008.   As alleged in the Joint Consolidated Second Amended Complaint, *Kaplan* ECF No. 162 (the "Complaint"),[7] SAC Capital Defendants illegally gained profits and avoided losses of at least $77.5 million from trades in Wyeth stock.

More specifically, Wyeth Lead Plaintiffs allege that Defendant Martoma, an SAC portfolio manager, obtained inside information from Sidney Gilman,[8] a medical doctor who chaired the Safety Monitoring Committee that oversaw the bapi Phase 2 clinical trial on behalf of Elan and Wyeth, and Joel Ross, a doctor who served as principal investigator at one of the sites that treated patients participating in the trial.   Defendant Martoma allegedly discussed bapi with Dr. Gilman and Dr. Ross on more than fifty occasions between August 2006 and July 2008, and obtained extensive, detailed confidential information from them concerning the safety and efficacy of bapi and the conduct of its clinical trials.   During this period, SAC Capital Defendants accumulated a large position in Wyeth based on the positive inside information Drs. Gilman and Ross provided.

---

[6]      A separate but related securities fraud action, *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF) ("*Kaplan* Action"), was filed on behalf of Elan investors.  Neither the plaintiffs in that action nor their counsel are parties to the Settlement and Stipulation.

[7]      References to "*Kaplan* ECF No. __" are to filings appearing on the docket in the *Kaplan* Action.  References to "ECF No. __" are to filings appearing on the docket in the present action.

[8]      Dr. Gilman, initially a party to this matter, was later voluntarily dismissed as a defendant.  Additionally, the Settlement will release the Class's claims against Martoma.

On July 17, 2008, however, Dr. Gilman allegedly obtained and shared with Martoma the full, highly confidential bapi Phase 2 trial results.  As set forth in the Complaint, after studying the results for three days and extensively questioning Dr. Gilman, Martoma determined they were below market expectations and would drive a selloff.  After speaking with Cohen, Cohen and Martoma allegedly directed that SAC Capital Defendants liquidate their entire position in Elan and Wyeth (except for certain swaps that could not be quickly or quietly unwound) and they then massively shorted both stocks, selling over $995 million in shares in the seven trading days before the Phase 2 results were scheduled to be announced, at 5:00 pm EDT on July 29, 2008, at the International Conference on Alzheimer's Disease ("ICAD") medical conference.

## THE COURT-ORDERED NOTICE PROGRAM

The Court preliminarily approved the Settlement by order dated January 7, 2016.  *See* Revised Order Preliminary Approving Settlement, Certifying Class, and Providing for Notice of Settlement, ECF No. 48 (the "Preliminary Approval Order").  In compliance with the Court's Supplemental Order Approving Notice and Setting the Date for the Final Approval Hearing, filed April 29, 2016 (the "Supplemental Order"), ECF No. 59, and under the supervision of Wyeth Lead Counsel, Heffler Claims Group LLC ("Heffler"), the Court-appointed claims administrator, mailed a postcard notice (the "Postcard Notice") to:  (i) all potential members of the Class who could be reasonably identified; and (ii) known brokers/nominees who may have purchased Wyeth stock for the beneficial interest of individual investors.  To date, Heffler has mailed more than 365,380 Postcard Notices to potential Class Members and brokers/nominees.  Clark-Weintraub Decl. ¶41.  The Postcard Notice described the key features of the proposed Settlement and also directed Class Members to a website where they could obtain the Long Notice and Proof of Claim Form (the "Long Notice").  *Id*. ¶42; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014)  ("The use of a combination of a mailed

post card directing class members to a more detailed online notice has been approved by courts.").[9]  In addition, the Postcard Notice provided information regarding a toll-free telephone hotline which could assist potential Class Members with questions about the Settlement.  Clark-Weintraub Decl. ¶42 fn.8.  Finally, the Summary Notice was published in *The Wall Street Journal* and *Investors' Business Daily* and disseminated on *PR Newswire*.  *Id*. ¶¶42, 69.

The purpose of the Postcard Notice was to, *inter alia*, summarize the claims asserted in the Action, and provide information regarding the amount of the Settlement Fund, the attorneys' fees request, the right to object to the Settlement and the right to seek to be excluded from the Class.  The Postcard Notice also provided the deadlines for objecting or seeking exclusion from the Class and advised potential Class Members of the scheduled Settlement Hearing before this Court.  *Id.* ¶43.[10]  The Postcard Notice specifically notified Class Members that Plaintiffs' Counsel's request for attorneys' fees would not exceed 30% of the Settlement Fund and their request for reimbursement of expenses would not exceed $375,000.  *Id*.  The Postcard Notice further provided that such application for fees and expenses also may include a request for a modest separate award to the Wyeth Lead Plaintiffs for reimbursement of their reasonable costs and expenses directly relating to their representation of the Class.  *Id.*

The Class's reaction to the proposed Settlement has been extremely positive.  While the dates to opt out from the Settlement (August 24, 2016) or to object thereto (September 2, 2016)

---

[9]     Through the Supplemental Order, this Court joined an increasing number of courts which have found that the use of postcard notice satisfies the requirements of Federal Rule of Civil Procedure 23 and due process.  *See, e.g.*, *In re Advanced Battery*, 298 F.R.D. at 182 n.3; *AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011); *In re Countrywide Fin'l Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12-13 (W.D. Ky. Dec. 22, 2009) (approving postcard notice and summary notice, both of which referred class members to website and toll-free number to obtain full notice).

[10]    More detailed information regarding each of these topics was contained in the Long Notice.  *See* Clark-Weintraub Decl. ¶43.

have not yet passed, to date there have only been 3 requests for exclusion and 1 objection to the proposed Settlement.  Clark-Weintraub Decl. ¶¶43, 70; *see also* discussion *infra* Part C.2.  These facts underscore the Class's overwhelming satisfaction with the result achieved.

## ARGUMENT

### I.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION

"Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'"  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).[11]  In presenting the proposed Settlement to the Court for preliminary approval, the Wyeth Lead Plaintiffs requested that the Court preliminarily certify the Class for settlement purposes so that notice of the proposed Settlement, the final approval hearing and the rights of Class Members to request exclusion, object, or submit proofs of claim could be issued.  In the Preliminary Approval Order, this Court preliminarily certified the Class.  *See* Preliminary Approval Order at 2-3.  Since that time, nothing has changed to alter the propriety of the Court's certification, and no potential Class Member has objected to class certification.  Furthermore, there are no conflicts between Wyeth Lead Plaintiffs and the Class Members that would preclude the Court from exercising its broad discretion to certify a settlement class.  *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14 Civ.1937(HBP), 2015 WL 5730008, at *3 (S.D.N.Y. Sept. 30, 2015) ("To date, no facts have been presented to me to indicate that my preliminary determination was incorrect nor has any party claimed that my preliminary determination was erroneous.  Thus, for the reasons stated in the Preliminary Approval Order, I conclude that final certification of the Settlement Class is proper.").

---

[11]    Unless otherwise noted, internal citations are omitted and emphasis is added.

Accordingly, and for all the reasons stated in support of Wyeth Lead Plaintiffs' Unopposed Motion for (i) Preliminary Approval of Settlement, (ii) Certification of a Settlement Class, and (iii) Approval of Notice dated December 23, 2015, incorporated herein by reference, Plaintiffs now request that the Court:  (i) finally certify the Class for purposes of carrying out the Settlement pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Wyeth Lead Counsel as Class Counsel.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Standard for Evaluating Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and that the settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *Acevedo v. Workfit Med. LLC*, No. 6:14-CV-06221 EAW, 2016 WL 2962930, at *3 (W.D.N.Y. May 20, 2016) (same).

While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, particularly with respect to class actions.  *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) ("[P]ublic policy favors settlement, especially in the case of class actions.").  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has

cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, "it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d. Cir. 2000); *see also In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 739 (S.D.N.Y. 1993) (noting, in settlement context, court "need 'not decide the merits of the case or resolve unsettled legal questions'").

In addition to a presumption of fairness that attaches to a settlement reached as a result of arm's-length negotiations,[12] the Second Circuit identified in *Grinnell* nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL

---

[12]    "'So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.'" *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *5 (S.D.N.Y. Sept. 9, 2015) (alteration in original); *see also id.* ("The Settlement is entitled to an initial presumption of fairness and adequacy because it was reached by experienced, fully-informed counsel after extensive arm's-length negotiations.").

4526593, at *10 (S.D.N.Y. Dec. 20, 2007).  As described in greater detail below, this Settlement easily merits approval under *Grinnell*.

**B.     The Settlement Is Procedurally Fair**

The presumption of fairness applies to this Settlement because it was "reached in arm's length negotiations among able counsel."  *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *7 (S.D.N.Y. Mar. 24, 2014) ("A class action settlement is entitled to a presumption of fairness when it is the product of extensive arm's-length negotiations.").  As such, if the negotiations leading to the settlement are fair, "the forces of self-interest and vigorous advocacy will of their own accord produce the best possible results for all sides."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).  As detailed in the Clark-Weintraub Declaration, the negotiations here were hard-fought and contentious and required the parties' careful analysis of novel and complex factual and legal issues.  *See* Clark-Weintraub Decl. ¶59.

In addition, this initial presumption of fairness is further supported by the fact that the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations with the assistance of Judge Phillips, one of the premier mediators in complex, multi-party, high-stakes litigation.  S*ee In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding settlement fair when parties engaged in "arm's length negotiations . . . mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *Giant Interactive*, 279 F.R.D. at 160 (finding settlement entitled to presumption of fairness when product of "arms-length negotiation . . . facilitated by [Judge Phillips,] a respected mediator").

10

Moreover, Wyeth Lead Counsel, who have extensive experience prosecuting complex securities class actions and are intimately familiar with the facts of this case, believe that the Settlement is just, fair, reasonable, and adequate, as well as an excellent result for the Class. *See* Clark-Weintraub Decl. ¶32. This opinion is entitled to "great weight." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also In re Advanced Battery*, 298 F.R.D. at 179 ("Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Lastly, the recommendation of the Wyeth Lead Plaintiffs, sophisticated institutional investors, also supports the fairness of the Settlement.[13] "A settlement reached 'under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.'" *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) (alteration in original) (quoting *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007)); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("Moreover, the recommendation of Lead Plaintiffs, which are sophisticated institutional investors, also supports the fairness of the Settlement.").

---

[13]    *See* Declaration of Bart Elst of Lead Plaintiff KBC Asset Management NV in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and Wyeth Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement of Plaintiffs' Expenses ¶11 ("KBC Decl."); and Decl. of James D. Love on Behalf of Lead Plaintiff Birmingham Retirement and Relief System in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and Wyeth Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement of Plaintiffs' Expenses ¶11 ("Birmingham Decl.").

All of these considerations confirm the reasonableness of the Settlement and that the Settlement is entitled to the presumption of procedural fairness.

      **C.**      **Application of the *Grinnell* Factors Supports Approval of the Settlement**

            **1.**      **The complexity, expense, and likely duration of the litigation support final approval of the Settlement.**

"Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action." *In re Advanced Battery*, 298 F.R.D. at 175. As such, "[t]his factor captures the probable costs, in both time and money, of continued litigation." *Shapiro*, 2014 WL 1224666, at *8. "Indeed, securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain.'" *City of Providence*, 2014 WL 1883494, at *5; *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)(same).

Here, further litigation would have required substantial additional expenditures of time and money, involving complex issues of law and fact, with a significant risk of a lower or no recovery. *See* Clark-Weintraub Decl. ¶38; *see also In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to . . . the calculation of damages."). In the absence of the Settlement, the Action would have required completion of extensive fact and expert discovery, summary judgment motions, litigating *Daubert* motions, proving Plaintiffs' claims at trial, and post-trial motion practice. And, throughout each litigation phase, Plaintiffs undoubtedly would have faced a vigorous defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL

2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving securities fraud settlement where issues "were likely to be litigated aggressively, at substantial expense to all parties").  As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials."  *AOL Time Warner*, 2006 WL 903236, at *8.

Even if Plaintiffs could recover an equally large (or larger) judgment after a trial – an uncertain proposition – the additional delay through post-trial motions and the appellate process could deny the Class any recovery for years, further reducing its value.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . , the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *City of Providence*, 2014 WL 1883494, at *5 ("[E]ven winning at a trial does not guarantee a recovery to the Class, because there is always a risk that the verdict could be reversed on appeal.").  Thus, this factor weighs strongly in favor of approval of the Settlement.

### 2. The reaction of the Class to the Settlement supports final approval of the Settlement.

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy and "the absence of objectants may itself be taken as evidencing the fairness of a settlement."  *PaineWebber*, 171 F.R.D. at 126; *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09cv1293 (VLB), 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) (same); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *6 (S.D.N.Y. Oct. 2, 2013) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.'").  Indeed, the reaction of the class to a settlement "is

considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *In re Veeco*, 2007 WL 4115809, at *7.

Here, pursuant to the Supplemental Order, over 365,380 Postcard Notices have been mailed and the Summary Notice was published in *The Wall Street Journal* and *Investor's Business Daily* and disseminated over PR Newswire. *See supra* at 5. To date, however, only one objection and three requests for exclusion have been received. *Id.* The fact that objectors and opt-outs represent such a small fraction of the entire Class supports the conclusion that the Settlement is fair and reasonable. *See Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (finding class reaction favorable when only eleven members opted out and only three objected); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (finding class reaction favorable when less than 1% of class objected and only seven class members opted out).

The sole objector to date is Richard A. Wilson, who asserts that the settlement procedure is unfair because it requires Class Members to submit trading documentation from 2008. *See* Ex. C hereto. Mr. Wilson further asserts that the SAC Capital Defendants possess this trading information. *Id.* This objection should be rejected.

As a threshold matter, Defendants do not have access to the private trading records of individual Wyeth investors. Moreover, courts repeatedly have upheld the appropriateness of claim processes in securities (and other) class actions that require claimants to submit relevant transaction information. *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *25 (S.D.N.Y. Dec. 23, 2009) (holding that requiring class members to submit transaction information "comport[ed] with the long-approved procedures for the efficient management of class-action settlement distributions" and noting "[w]ithout that

necessary information, the Claims Administrator could not calculate claimants' distributions");

*In re Wirebound Boxes Antitrust Litig.*, 993 F.2d 152, 154 (8th Cir. 1993) ("Requiring documentation for claims against the settlement fund was entirely appropriate and essential to insure equitable distribution among the class members."); *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *12 (S.D.N.Y. Nov. 12, 2004) ("Lusk asserts that class members should not be required to document their trading losses . . . . [This] provision[ is] important in helping to insure that the settlement fund is distributed to class members who deserve to recover from the fund.").[14]

If any further objections to the Settlement or additional requests for exclusion are received subsequent to the filing of this brief, Plaintiffs will respond in their reply papers, which are due on September 16, 2016.

**3.    The stage of the proceedings and discovery completed support final approval of the Settlement.**

The next *Grinnell* factor looks to "the stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, and further examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement," *Bear Stearns*, 909 F. Supp. 2d at 267.  To satisfy this factor, the parties "need not 'have engaged in extensive discovery' as long as 'they

---

[14]    Similarly, in *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa. 2015), the district court recognized that "[c]lass members must usually file claims forms providing details about their claims and other information needed to administer the settlement."  *Id*. at 416.  The court expressly rejected the contention that "the claims process [was] unduly burdensome," holding that "the claims process needs to be rigorous enough to deter submission of fraudulent claims."  *Id*. at 414.  On appeal, the Third Circuit affirmed the approval of the settlement and found that the required claims process was reasonable.  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 447 (3d Cir. 2016).

have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10 (alteration in original).

By the time the parties agreed to settle the Action, the Wyeth Lead Plaintiffs and their counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make an informed assessment regarding the chances of success.  In that regard, Wyeth Lead Plaintiffs, through their counsel, already had, among other things:  (1) expended significant time researching the claims and potential defenses thereto; (2) assisted in the drafting of multiple extensive amended complaints, oppositions to two motions to dismiss, and Plaintiffs' motion for class certification; and (3) assisted in the review of the over four million pages of discovery documents.[15]  Clark-Weintraub Decl. ¶5.  In addition, plaintiffs and their investment managers produced hundreds of pages of documents and sat for depositions.  Counsel also engaged in an extensive mediation process under the supervision of Judge Phillips that included, *inter alia*, the exchange of detailed written submissions addressing liability and damages; two formal mediation sessions; and several months of follow-up negotiations.  *Id.* ¶31.

In light of these efforts, Plaintiffs and their counsel had "a clear view of the strengths and weaknesses of their cases" and of the range of possible outcomes at trial.  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).  Accordingly, this factor supports approval of the Settlement.

---

[15]     *See Sykes v. Mel Harris & Assocs., LLC*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *3 (S.D.N.Y. May 24, 2016) (approving settlement and noting parties "engaged in extensive document discovery [of] over 500,000 pages of documents").

### 4.    The reasonableness of the Settlement in relation to the risk of establishing liability and damages supports final approval of the Settlement.

Establishing liability in a federal securities class action is always an uncertain proposition. *Hi-Crush*, 2014 WL 7323417, at *8 ("Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.").   Furthermore, even if Plaintiffs successfully established liability, they also faced substantial risk in proving damages.   In federal securities cases, the measure of damages remains "a complicated and uncertain process."   *In re Global Crossing*, 225 F.R.D. at 459.   Although Plaintiffs and their counsel believe that they could have prevailed on the insider trading claims set forth in the Complaint, they also recognize that there were considerable risks involved in pursuing the litigation against the SAC Capital Defendants that could have led to a substantially smaller recovery or no recovery at all.[16]

As described herein, at the time of Settlement, the most significant risk facing the *Birmingham* Plaintiffs with respect to the claims of the Buying Class was the risk of proving damages.   The SAC Capital Defendants' agreement to pay disgorgement of approximately $54 million in profits gained and losses avoided through its insider trading in Wyeth during the Buying Period, along with approximately $10 million in pre-judgment interest, as part of its settlement of the SEC enforcement action substantially reduced, if not eliminated, recoverable damages with respect to the Buying Period Claims.   Although the *Birmingham* Plaintiffs were free to try to prove that the amount of disgorgement paid to the SEC was insufficient (*Kaplan*

---

[16]     In the context of approving class action settlements, "[c]ourts experienced with securities fraud litigation, '"routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."'"   *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19 (C.D. Cal. July 9, 2013) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)).

ECF No. 152 at 10) and had theories of recovery with respect to pre-judgment interest that might have resulted in millions of dollars in additional recovery for these claims, the potential amounts at issue were modest and Plaintiffs' theories were hotly contested by the SAC Capital Defendants. *See*, *e.g.*, *Kaplan* ECF No. 261, 265.

While not impacted by the SAC Capital Defendants' SEC settlement (because such claims were not pursued by the SEC), the claims of the Selling Class also presented significant risks. As an initial matter, the SAC Capital Defendants argued that the Selling Claims relied on "improper double-counting by seeking disgorgement of the same amounts twice – first as alleged paper gains on SAC's . . . Wyeth holdings when prices increased . . . , and then as alleged avoided losses on the very same holdings when the prices declined . . . ." *See Kaplan* ECF No. 130 at 20. Although the Wyeth Plaintiffs strongly disagree and this Court rejected this argument in substantially denying the SAC Capital Defendants' motion to dismiss (*see* Kaplan ECF No. 152 at 22), the SAC Capital Defendants likely would have pursued an appeal of this ruling had the *Birmingham* Plaintiffs prevailed at trial with respect to these claims.

Further, the SAC Capital Defendants argued that the damages suffered by the Wyeth Selling Class were less than claimed due to the 90-day "bounce-back" provision of the PSLRA. In this regard, the SAC Capital Defendants asserted that the price of Wyeth common stock during the 90-day bounce-back period, on average, was 1.6% lower than its closing price on June 17, 2008.

Indeed, the analysis of the Wyeth Lead Plaintiffs' own experts regarding recoverable damages during the Selling Period demonstrated that damages were relatively modest, especially when weighed against the cost of taking the claims to trial. In this regard, the calculations of the expert revealed that the recoverable damages of the Wyeth Selling Class were just $21 million

excluding pre-judgment interest.  Although, as noted above, Plaintiffs had various theories that might have resulted in the recovery of pre-judgment interest of as much as $30 million with respect to these claims, these theories were fiercely contested by Defendants and success was far from certain.

The Settlement eliminates the above litigation risks and guarantees the Settlement Class a cash recovery now.  Wyeth Lead Counsel firmly believe that settling the Action at this juncture and for the amount negotiated was and is in the best interests of the Class.

For the foregoing reasons, among others, Plaintiffs faced undeniable challenges in continuing the litigation against the Defendants.  Against that backdrop, the Settlement represents a highly favorable recovery for the Class.  *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class.  In the circumstances of such a case as this, it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'"); *Hi-Crush*, 2014 WL 7323417, at *6 ("[T]he Settlement offers the opportunity to provide definite recompense to the Class now – making the instant Settlement a particularly valuable 'bird in the hand.'").

Apart from the foregoing, another potential hurdle facing a putative insider trading class action that follows an SEC settlement, such as this one, is the statutory requirement that the total amount of damages imposed against any person under Section 20A "be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission," 15 U.S.C. § 78t-1(b)(2); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008) (noting damages are "offset by any disgorgements [made] to the SEC").  As this Court noted in its first motion to dismiss ruling,

"any damages Plaintiffs can collect . . . will be diminished by disgorgement from the SEC-SAC settlement." *Kaplan*, 40 F. Supp. 3d at 338.

Moreover when, as here, the issue of recoverable damages is so hotly debated, the parties were expected to rely on expert testimony to assist the jury.  *See In re Global Crossing*, 225 F.R.D. at 459 ("'[P]roof of damages in securities cases . . . invariably requires expert testimony which may, or may not be, accepted by a jury.'") (first alteration in original).  "Undoubtedly, the Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky 'battle of the experts.'"  *City of Providence*, 2014 WL 1883494, at *9; *see also In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (finding final approval warranted when, *inter alia*, "the damage assessments of Plaintiffs' and Defendants' experts who would be called at trial were sure to vary substantially, thus precipitating a 'battle of the experts,'" thus raising "the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").  "The complex issues surrounding damages, therefore, support final approval of the Settlement."  *City of Providence*, 2014 WL 1883494, at *9.

> **5.      The risks of maintaining the class action through trial support final approval of the Settlement.**

The Court did grant a class certification motion filed by the *Kaplan* Plaintiffs, *see Kaplan* ECF No. 243, and would, therefore, almost certainly have certified a litigation class in this Action.  That said, even if such a class had been certified, Defendants could have moved to decertify the class at any time.  *See, e.g.*, *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."); *In re Global Crossing*, 225 F.R.D. at 460

("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."); *In re Advanced Battery*, 298 F.R.D. at 178 (noting that, even if a class was certified, "Federal Rule of Civil Procedure 23(c) authorizes a court to decertify a class at any time").  The Settlement avoids any uncertainty with respect to class certification.

> ### 6. The ability of Defendants to withstand a greater judgment supports final approval of the Settlement.

The ability of a defendant to pay a judgment greater than the amount offered in a settlement can be relevant to whether a settlement is fair.  *See, e.g.*, *Grinnell*, 495 F.2d at 463. The fact, however, that a defendant is able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate."); *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006) ("[T]he ability of defendants to pay more, on its own, does not render the settlement unfair, especially where the other *Grinnell* factors favor approval.").

While it appears that the SAC Capital Defendants have sufficient resources to pay a sum larger than the Settlement Amount, as a practical matter, the prospects of recovering a substantially greater sum at trial were extremely risky and would have been offset by the inevitable post-trial motions and appeals.  Additionally, the Settlement eliminates any risk of collection.  In fact, the Settlement Amount is already earning interest for the Class.  Under these circumstances, this factor weighs in favor of settlement approval.

       7.      **The amount of the Settlement supports final approval of the Settlement.**

Courts typically combine their analysis of the final two *Grinnell* factors:  (i) the best possible recovery; and (ii) litigation risks.  *See Grinnell*, 495 F.2d at 463.  In this context, courts analyze "how the settlement relates to the strengths and weaknesses of the case."  *City of Providence*, 2014 WL 1883494, at *9.  More specifically, a "court 'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.'"  *Id* (alterations in original).  "Courts agree that the determination of a 'reasonable' settlement 'is not susceptible of a mathematical equation yielding a particularized sum.'"  *Id.*  "Instead, 'in any case there is a range of reasonableness with respect to a settlement.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The proposed $10 million Settlement represents a highly favorable recovery for the Class and also "is in line with the median ratio of settlement size to investor losses."  *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014).  According to a recent report published by Cornerstone Research, in 2015, nearly 50 percent of settlements approved in securities class action cases settled for ***less than $5 million***, and the median recovery in securities cases with estimated damages of $50 million to $124 million was only 2.4% (the median recovery dropped to only 1.7% where estimated damages were between $125 million to $249 million).[17]  Wyeth Lead Counsel retained a consulting expert to analyze the damages suffered by the Class pursuant to the alleged Wyeth-related fraud.  Based on the opinion of that expert, the Settlement

---

[17]     *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis* (Cornerstone Research 2016) ("Cornerstone Report") (attached as Ex. D hereto).

represents close to 50% of likely recoverable damages (excluding pre-judgment interest) available in this Action given the amount paid in disgorgement by the SAC Capital Defendants to settle an enforcement action brought by the SEC, *SEC v. CR Intrinsic Investors, LLC,* No. 12 Civ. 8466 (S.D.N.Y.), which involved some of the same misconduct at issue here.  This is a substantial recovery in light of Defendants' countervailing legal and factual arguments and the risks of continued litigation.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding $12 million settlement recovering 7% of estimated damages fair and adequate); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The settlement . . . represents a recovery of approximately 6.25% of estimated damages.  This is at the higher end of the range of reasonableness of recovery in class actions securities litigations.").

In addition, even if the case were to survive an inevitable defense motion for summary judgment and make it to trial (an uncertain proposition), Defendants would present their own expert, who would no doubt supply the jury with a competing analysis supporting a damages range far below that calculated by Plaintiffs' consulting expert.  In the absence of a Settlement, there was a risk that the Court or jury would resolve that "battle of the experts" against Wyeth Lead Plaintiffs and the Class.[18]

In view of the foregoing, there is no question that the Settlement – and the certain payment for the Class – represents an excellent result.

---

[18]     *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761(CM), 2008 WL 2944620, at *5 (S.D.N.Y. July 31, 2008) (addressing significant risk of establishing damages at trial, particularly when, as here, "the crucial element of damages would likely be reduced at trial to a 'battle of the experts'").

### III.   THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The Wyeth Lead Plaintiffs also seek the Court's approval of the proposed Plan of Allocation of the Net Settlement Fund.  "The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole:  '"namely, it must be fair and adequate."'"  *City of Providence*, 2014 WL 1883494, at *10 (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).  Moreover, a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Am. Bank Note Holographics*, 127 F. Supp. 2d at 429-30; *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (same).

Here, Wyeth Lead Counsel prepared the Plan of Allocation after careful consideration and with the assistance of a consulting damages expert.  *See* Clark-Weintraub Decl. ¶7.  The Plan of Allocation was fully disclosed in the Long Notice that was made available to potential Class Members and nominees.  *Id*. ¶¶45-49.  The Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among Authorized Claimants based on their respective recognized losses.  Plaintiffs and their counsel submit that the Plan of Allocation is fair, reasonable, and adequate and should be approved.  *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003) (approving as fair and reasonable plan that adopted *pro rata* method for calculating each class member's share of settlement fund).[19]

### CONCLUSION

For the reasons discussed above, the Settlement achieves substantial benefits for the Class, and is reasonable, fair, and adequate under any standard, but particularly when the risks,

---

[19]    To date, no objections have been received to the Plan of Allocation.  If any objection to that plan are received subsequent to the filing this brief, Plaintiffs will respond in their reply papers due September 16, 2016.

complexity, and likely duration of further litigation are considered.  The Wyeth Lead Plaintiffs support the Settlement after a thorough investigation of the facts and the law and careful consideration of both the risks and the benefits.   Accordingly, the Wyeth Lead Plaintiffs respectfully request that the Court:  (i) grant final approval of the Settlement; (ii) find that notice to the Class was provided as required by the Court and to the satisfaction of all applicable legal requirements; (iii) finally certify the Class; (iv) appoint Plaintiffs as Class Representatives and Wyeth Lead Counsel as Class Counsel; and (v) approve the Plan of Allocation as fair, reasonable, and adequate.

Respectfully submitted,

Dated:  August 19, 2016

MOTLEY RICE LLC

By: /s/ *Gregg S. Levin*
Gregg S. Levin
Meredith B. Miller
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Tel:  (843) 216-9000
Fax: (843) 216-9450
glevin@motleyrice.com
mbmiller@motleyrice.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

By: /s/ *Deborah Clark-Weintraub*
Deborah Clark-Weintraub
Max R. Schwartz
Thomas L. Laughlin
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel:  (212) 223-6444
Fax:  (212) 223-6334
dweintraub@scott-scott.com
mschwartz@scott-scott.com
tlaughlin@scott-scott.com

*Lead Counsel and Counsel for Wyeth Lead Plaintiffs*
*Birmingham Retirement and Relief System and KBC Asset Management NV*

*- All Plaintiffs' Counsel consent to the use of their electronic signatures. -*

25